# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CELESTE MYERS,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
|       v. | )  Civil No. 16-1190-JAR |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Celeste Myers' application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1] Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

## I.   Procedural History

On April 21, 2009, Plaintiff protectively applied for a period of disability and disability insurance benefits, alleging an onset date of December 31, 2006. Plaintiff was last insured for disability insurance benefits on June 30, 2009. Plaintiff's application was denied initially and upon reconsideration; after a hearing, the ALJ issued a decision finding that Plaintiff was not disabled and the Appeals Council denied Plaintiff's request for review. Plaintiff then sought judicial review in this court.[2]

---

[1] 42 U.S.C. §§ 401–434.

[2] *Myers v. Colvin*, No. 13-1028-JWL (D. Kan. 2013).

On April 22, 2014 the Honorable John W. Lungstrum reversed the Commissioner's decision and remanded the matter pursuant to the fourth sentence of 42 U.S.C. § 405(g).[3] The court found error in the ALJ's determination that Plaintiff must alternate between sitting and standing, in that "the ALJ failed to explain whether the need to alternate sitting and standing can be accommodated by scheduled breaks and a lunch period, and did not make a finding regarding the length of the time needed to stand, all as required by Social Security Ruling (SSR) 96-9p."[4] The court further declined to provide an advisory opinion on the ALJ's credibility determination, noting that Plaintiff could make arguments about credibility to the ALJ upon remand.

Upon remand, the case was assigned to a new ALJ who conducted a hearing, and issued a decision in February 2015 that Plaintiff was not disabled.  The new ALJ, Michael D. Shilling, determined that Plaintiff had the residual functional capacity ("RFC") "to perform the full range of sedentary work . . . limited to unskilled work, based on her history of pain."  The ALJ did not discuss, nor even mention, any consideration of whether Plaintiff needed an option to alternate sitting and standing.

The Appeals Council denied Plaintiff's request for review and Plaintiff then sought judicial review in this Court.  Plaintiff the filed this action, seeking  judicial review.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the

---

[3]*Myers v. Colvin*, No. 13-1028-JWL, 2014 WL 1607586, at *4 (D. Kan. Apr. 22, 2014).

[4]*Id.*

correct legal standards.[5] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[7]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[8] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[9] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[10] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[11]

Upon remand, Plaintiff does not challenge the ALJ's determinations at steps one, two and three. But Plaintiff challenges the ALJ's determination of Plaintiff's RFC, and particularly, the

---

[5] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[6] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[7] *Id.*

[8] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[9] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[10] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[11] *Id.*

ALJ's determination that Plaintiff has the RFC to perform the full range of sedentary work, limited to unskilled work, based on her history of pain. In determining her RFC, Plaintiff contends that the ALJ erred in three respects: (1) there is not substantial evidence supporting the ALJ's determination that Plaintiff did not need any option to alternate sitting and standing; (2) the ALJ improperly gave little weight to treating physician Dr. Thomas's opinion that Plaintiff was significantly disabled due to her persistent back pain and right-sided sciatica; and (3) the ALJ failed to properly develop the record, considering he gave no weight to the treating physician's opinion and given that the state agency physician had declined to render an opinion based on insufficient evidence to determine Plaintiff's limitations. The Court addresses these arguments in turn.

## IV.  Discussion

### A.  Sit/Stand Option

The first ALJ found that Plaintiff needed the option to alternate sitting and standing. Judge Lungstrum remanded because the ALJ did not apply the correct legal standard, SSR 96-9p, in determining the frequency of alteration (every two hours); did not provide a rationale nor cite to record evidence supporting her findings; and implied that Plaintiff must stand for two-hour stretches while doing sedentary work, without determining the effect that a need to stand for two hours would have on the sedentary job base. Thus, Judge Lungstrum reversed and remanded for the following purpose:

> [T]he decision leaves ambiguities regarding what time Plaintiff must work from a standing position after having worked from a sitting position for up to two hours, and whether the representative jobs suggested by the vocational expert will permit working from a standing position at that frequency and for that duration. Remand

is necessary to clarify these ambiguities.[12]

Upon remand, the second ALJ determined that Plaintiff could perform the full range of sedentary work, limited to unskilled work, but did not include a sit/stand option at all in the RFC. The second ALJ did not explain why he did not include a sit/stand option, and thus did not address the ambiguities that Judge Lungstrum indicated needed clarification.

Plaintiff does not argue that the ALJ had to include a sit/stand option in the RFC upon remand. Indeed, on remand from the Appeals Council, following a judicial remand, the ALJ is not bound in his second review to an ALJ's earlier RFC decision.[13] Although in this Court's view, the second ALJ should have explained why he did not include a sit/stand option, the Court does not find this to be reversible error in this case.[14] For here, other than referencing Plaintiff's subjective complaints about her inability to sit or stand for lengths of time, the first ALJ's imposition of a sit/stand option for two-hour intervals did not find any evidentiary support. In contrast, as further discussed below, the second ALJ's determination that Plaintiff had the RFC to perform the full range of sedentary work, limited to unskilled work, is supported by substantial evidence.

Here, the only evidence relevant to a sit/stand option is Plaintiff's testimony or reports. Plaintiff testified or reported that she could stand for about twenty minutes, and could sit, but would need to adjust every thirty minutes. Plaintiff further testified or reported that she could

---

[12]*Myers v. Colvin*, No. 13-1028-JWL, 2014 WL 1607586, at *4 (D. Kan. Apr. 22, 2014).

[13]*Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004)(*citing Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir.1987)).

[14]*Cf. id.* at 1223–24 (where the court was concerned that the second ALJ decision failed to explain how it reached a different conclusion based on the same evidentiary record, but reversed because the second decision was not supported by substantial evidence).

not sit long enough to do her past work as a secretary, and that she needed a ten minute break every work hour. The ALJ effectively explained why he gave little or no credit to Plaintiff's subjective complaints on this issue, concluding that "[t]here is no objective evidence to support finding that the claimant is limited to less than a full range of sedentary work, even giving her the benefit of the doubt and finding her limited to unskilled work based only on her reported pain." The ALJ further found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . ."

In evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ properly considered the entire case record and a number of factors set forth in a nonexhaustive list provided in the regulations,[15] including:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[16]

While the Commissioner has "eliminat[ed] the use of the term 'credibility,'" as "subjective

---

[15] SSR 16-3p, 2016 WL 119029 (March 16, 2016)(citing 20 CFR §§404.1529(c)(3) and 416.929(c)(3)).

[16] *Id.*

symptom evaluation is not an examination of an individual's character," but a "symptom evaluation,"[17] these factors, derived from the regulations, are consistent with the Tenth Circuit's directives on the factors that should be considered in evaluating the credibility of a subjective complaints.[18]

Here, the ALJ thoroughly addressed the inconsistency of Plaintiff's subjective complaints with the objective medical evidence. The ALJ discussed the longitudinal medical record during the pertinent time period (December 31, 2006 through June 30, 2009) and found that a series of MRIs revealed only mild or moderate degenerative disc disease with no serious abnormalities. And, although there was a documented positive straight leg raise test prior to December 31, 2006, in subsequent examinations by her treating physician, Dr. Thomas, as well as other physicians, Plaintiff consistently had negative straight leg raise tests, as well as normal neurological examinations, normal motor strength and muscle tone, and a good range of motion in her lumbar spine. No physician ever recommended surgery or more aggressive treatment.

Further, the ALJ evaluated Plaintiff's subjective complaints under the relevant aforementioned factors. To be sure, Plaintiff tried a number of prescribed pain medications, epidural steroid injections, a TENS unit, and physical therapy, yet reported that she did not receive lasting or consistent improvements with these conservative courses of treatment. But, despite her complaints of constant, and often unbearable pain, she did not consistently seek medical treatment. In fact, while Plaintiff saw Drs. Thomas, Smith, Watkins and Tsai in 2006 for degenerative disc disease and associated back pain, she only infrequently sought medical

---

[17]*Id.*

[18]*See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citing *Thompson v. Sullivan*, 987 F.2d 1482, (10th Cir. 1993)).

treatment thereafter.  In January 2007, she saw Dr. Burton once.  In 2008 she saw Dr. Thomas only twice.  On May 22, 2009, she again saw Dr. Thomas, who referred her to a neurosurgeon, Dr. Moore in June 2009.  Dr. Moore did not recommend surgery.  Plaintiff received pain-relieving injections from Dr. Kucera on three occasions in 2009.[19]

Nor was Plaintiff totally compliant with prescribed treatment.  She attended only four physical therapy sessions and did not take one prescribed pain medication, Lyrica.[20]  Plaintiff did not receive any pain-relieving injections until after her last date of insured, June 30, 2009, and then did not follow through with all suggested injections.

The Court is mindful that "[c]redibility determinations are peculiarly the province of the finder of fact" and will stand when supported by substantial evidence,[21] such that courts usually defer to the ALJ on matters involving credibility.[22]  The Court defers to the ALJ's well-articulated and well-explained findings on credibility in this case.  Based on the objective medical evidence, and the evidence discrediting Plaintiff's subjective complaints, the Court concludes that there was substantial evidence supporting the ALJ's decision to not include a sit/stand option.

### B.     Opinion of Treating Physician

---

[19]Plaintiff's last date of insured was June 30, 2009.  In April 2010 she saw a chiropractor once.  She did not seek medical attention for her degenerative disc disease again until 2011, when she had another MRI, which revealed mild degeneration but no spinal stenosis, and an examination by Dr. Sankoorikal who found degenerative disc disease of the lumbar spine with radicular symptom to the right lower extremity.  She continued to see Dr. Thomas, as well as Dr. Wu in 2012 and 2013 for chronic back pain, which they treated with Tylenol #3, as well as recommending exercise, chronic pain management, and a nerve conduction study.

[20]At various times, Plaintiff explained that she could not afford the prescription, or that her internet research on the drug convinced her to not take it.

[21]*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

[22]*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

Plaintiff maintains that the ALJ also erred in giving little weight to the opinion of her treating physician Dr. Mark Thomas, that Plaintiff was "significantly disabled" from back pain and sciatica simply because the issue of disability is one that is reserved to the Commissioner. Plaintiff argues that the ALJ should have considered and given good reasons for rejecting Dr. Thomas's opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[23] But, a treating source provider's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record; but if it is "deficient in either respect, it is not entitled to controlling weight."[24] And, even if the opinion of a treating provider is not worthy of controlling weight, it must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[25]

Here, the ALJ thoroughly evaluated the objective medical evidence, as detailed above, and this Court finds no error in the ALJ's determination that Dr. Thomas's opinion was not worthy of controlling weight, in light of the objective medical evidence and the factors weighing against Plaintiff's subjective complaints that her pain was disabling. In evaluating Dr. Thomas's opinion, the ALJ properly considered the factors outlined by the Tenth Circuit in *Goatcher v. United States Department of Health & Human Services:* (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

---

[23]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)).

[24]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[25]*Hamlin*, 365 F.3d at 1215.

treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[26]

On May 23, 2009, Dr. Thomas noted that Plaintiff "was significantly disabled due to her persistent back pain and right-sided sciatica. She will need further workup and probably an opinion from a neurosurgeon as she is [sic] clearly failed to respond to conservative treatment over an extended period of time. We will repeat an MRI scan of the lumbar spine." Thereafter, Plaintiff had an MRI of her lumbar spine in May 2009, and in June 2009, Dr. Moore, the neurosurgeon, read the MRI and examined Plaintiff. Dr. Moore found that Plaintiff had "good range of motion with lumbar flexion, extension, and lateral rotation. She has negative straight-leg raises bilaterally. She has no discomfort with abduction or adduction of her hips." He further found that the MRI showed only "minimal degenerative disk disease . . . no frank disk herniation . . . no stenosis at any level . . . [and] alignment is normal." The MRI also evidenced that Plaintiff had mild degenerative changes of the lower lumbar spine facet joints, no focal disc herniation, no significant central canal stenosis and no nerve root impingement. Based on this examination and findings, Dr. Moore did not recommend surgical intervention, but recommended Plaintiff undergo a series of facet injections with Dr. Kucera. As discussed above, Plaintiff was not fully compliant with this course of treatment.

In short, other than the oral history and subjective complaints Plaintiff reported to Dr.

---

[26]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

Thomas, there is no evidence supporting his opinion that Plaintiff's pain was significantly disabling. The ALJ appropriately gave no weight to Dr. Thomas's conclusory opinion, which was not supported by substantial evidence.

### C.    Failure to Develop the Record

Finally, Plaintiff argues that given that the ALJ gave little weight to the opinion of her treating physician Dr. Thomas, and given that the state agency physician, Dr. Parsons found there was insufficient evidence for him to render an opinion, the ALJ erred in failing to develop the record upon remand. Plaintiff argues that the ALJ should have ordered a consultative examination. The Commissioner "has broad latitude in ordering consultative examinations"[27] in fulfilling the Commissioner's "duty of inquiry" to ensure that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.[28]

But, the fact that the ALJ considered and rejected the conclusory opinion of Plaintiff's treating physician does not mean the record was inadequate for the ALJ's determination of RFC. First, determination of the RFC is the responsibility of the ALJ, not medical practitioners.[29] The ALJ's determination of RFC must be based on the record and substantial evidence, but there need not be a specific medical opinion on the functional capacity in question.[30] Here, there was substantial evidence, in the form of objective medical evidence, the treatment records of Dr. Thomas and other treating providers, as well as MRIs and other clinical

---

[27]*Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citation omitted).

[28]*Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993) (citations, quotations, and brackets omitted).

[29]*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir.2012) (citations omitted).

[30]*Id.*

examinations and findings. The fact that Dr. Thomas did not render an opinion on any component of the RFC is of no accord.

Moreover, although the state agency physician concluded that there was insufficient evidence for him to render an opinion, this is primarily a product of the limited temporal window that was relevant to the ALJ's determination of the RFC. Plaintiff alleged that the onset of disability occurred on December 31, 2006, and she was last insured for disability insurance benefits on June 30, 2009. Thus, the relevant time period is 36 months.

Furthermore, given that the period of last insured ended on June 30, 2009, and given that Plaintiff did not seek to re-institute a new or later period of insured status, a consultative examination in 2014 or 2015, during the course of the remand, would have been of little or limited assistance in determining whether Plaintiff was disabled during the period between December 2006 and June 2009. An ALJ is not required to order a consultative examination unless the ALJ cannot come to a determination of disability and believes that a consultative examination could resolve inconsistencies or insufficiencies in the evidence that would allow a determination of disability.[31] Here, the ALJ was able to determine disability and the record demonstrates that a consultative examination in 2004 or 2015 would not have furthered a determination of disability.

## V. Conclusion

Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

---

[31] *See* 20 C.F.R. § 404.1520b(c)(3).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: December 19, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE